The court would call in the interest of G.A.R. Rob A.R. Candidate. May I please report counsel. My name is Neil. I was appointed by the Hardin County Circuit Court. As counsel on appeal in this matter. I was not the trial attorney. It was presented to me by the judge as an ineffective assistance to counsel. And talking with the trial attorney it was framed in the same way. After getting the court transcripts and doing the research, I found the case of Ben Ray C.J. and came to the conclusion that the trial attorney didn't secure the respondents their Fourth Amendment rights of due process. The state's attorney at Hardin County filed a petition to terminate the parental rights of the respondents which was granted by the court. During these proceedings, the respondents both were sentenced to federal court on each side of the country on both coasts. During the hearings the record shows that the trial counsel did communicate somewhat with the respondents, but it is the respondents contention that he didn't attempt to secure from the court the processes by which their Fourth Amendment rights would be secured. The respondents relied on Ben Ray C.J. In going through this case you have to begin first with the test for ineffective counsel. Those standards are set forth in Strickland v. Washington. The respondents must demonstrate counsel made errors so serious that he was deficient not functioning as counsel guaranteed by the Sixth Amendment. The second is that without the ineffective representation there would be a reasonable probability that the outcome of the trial would have been different. The second prong showing that without the ineffective representation there would be a reasonable probability that the outcome would be different. My contention is that the way this hearing should have been held or how the process should have went forward was the hearing should be held at that point it should be transcribed and given to the respondents giving them time to go over it and discuss it with their attorney on each hearing. There's like four here or five and then they have every time to communicate with their attorney and then they should have been allowed to rebut that by telephone. But don't you have to put forth some evidence that at least name some witnesses or something more concrete than you have just by saying there might be somebody that would come in and testify? Otherwise it's pure speculation. That's another contention. One is that they weren't giving a meaningful process where they could have testified and been a part of this. But what I thought we were getting at is how the outcome would have been different if they had been allowed more meaningful participation. The judge would have heard their testimony. What about their testimony would have changed the outcome? Well, as I the case we're relying on in the interest of CJ, the court addresses just what you're asking, that all I have to work with is the record on appeal. I wasn't the trial counsel. I don't know what happened. They're in federal prison. I've never dealt with clients in federal prison. It's very hard to get a hold of them. I've done a lot of these cases where the clients were in state court, and that's no problem to get them there. I've done three of these type of appeals within the last year, and it's made me a much better attorney in the trial court because I'm very mindful of getting things on the record. And I think that's a problem that a lot of attorneys don't have. So here again, as was addressed in Ray CJ, I don't have the evidence to show you that. And I think I stated that in my who the witnesses would have been, because I am stuck with the record on appeal, and I wasn't the trial attorney. But don't your clients have to assert something more than just saying it would have been a different outcome? You don't think CJ would support that? I mean, they have to have some meaningful way to participate. Well, I think at the very end of CJ, it points to some cases from other states and how they proceeded in their termination of criminal rights. And telephone testimony comes up, I think, in all three. So if that testimony would have been given to the court, it would have much more to consider. All they had was an attorney who said, here I have some letters, and I have the mother's attempts to satisfy the service plan that DCFS put out. And also, in this case, I don't think the clients were given the transcripts after each hearing. So I think that they satisfied the Strickland test. But to get to the Strickland test, you have to go through were they given due process, which brings you to, it states it in the interest of CJ, Matthews v. Eldridge, which has three prompts. Private interest that will be affected, the government's interest, that's the third one, and two, the risk of erroneous deprivation of such interest to the procedures used, and the probable value of any additional or substituted procedural safeguards. Number one is easy, the private interest that will be affected by the official action is taking children away from parents. There's no doubt that that is a very serious factor, and it's satisfied here. The second factor, risk of erroneous deprivation. The meaning that a mistake is made and the children are taken away from the children, which happens here. And that goes into procedures used, which we are contesting here, that the hearings didn't, as soon as one was done it wasn't transcribed and given right to the client, and then they had telephone testimony right after that, so they could be a meaningful, have a meaningful opportunity to be heard and defend through all affirmative procedures. Wasn't it anticipated that the father would testify by telephone somehow in this case? I don't recall seeing that in the record on appeal, Your Honor. I know there were transcripts. There were transcripts, Your Honor, and as the athlete states, that there were those transcripts, but from the record on appeal, I don't believe they were transcribed and immediately given to the respondents. And another issue I'd like to address, the record on appeal shows that the trial attorney would, he told the court, he would tell them what the testimony was and then come back and tell the court. They were getting second-hand knowledge. I don't know of any attorney who could get every word and fact in a hearing and give that to their client. As I recall from the facts, and they were kind of convoluted, I had trouble following them, but the one big distinction between C.J. in this case was that here the court had a several month recess between the state's testimony, our case, for the very purpose of the parties being able to put together defense, isn't that? The trial attorney requested the transcripts for the father, not the mother, and I believe it's like you said, it was convoluted, it was done in four or five different hearings, but I don't believe that. He didn't ask for the transcripts until halfway through this process. And as I made a motion to supplement the record on appeal, one wasn't transcribed until I requested it. So they couldn't have gotten all of it. And I believe that because the processes that I outlined were not followed by the court and weren't requested by the trial attorney that the respondent's due process rights were violated and therefore the trial attorney was not confident in his representation of the respondents. Therefore, the respondent would respectfully request this honorable court to reverse the circuit court's order to terminate the firm rights of the children, child, and remain in this case to the trial court for further proceedings. Any questions? Thank you. May it please the court. Counsel. Jennifer Camden on behalf of the state. The respondents in the brief, in their brief at pages six and ten concede that the state has failed to support the claims of ineffective assistance of counsel. And the respondents are asking this court to speculate about the extent of counsel's efforts in the court below, which is an exercise that this court on appeal may not do. Any doubts as to the zealousness of counsel's representation based on this inadequate and or silent record must be stated and this court should accept the respondent's concession that the record is inadequate to support his claims. Also, the respondents on what record we do have cannot prove a due process violation where they were timely informed of the state's evidence, consulted with counsel about it, and presented through counsel their desired evidence and arguments. Both the unfitness hearing and the best interest hearing were bifurcated so that counsel had an opportunity to consult with his clients and when both of the hearings resumed, counsel's presentation of evidence and arguments evidenced that consultation. That does distinguish this case from C.J. in which the circuit court refused counsel's request to bifurcate the hearing so that counsel in that case would have an opportunity to consult with his incarcerated client. This case is distinguishable from the other cases cited in the state's answer brief in which appellate courts have found a due process violation. In Vanessa C., the attorney was barred from presenting any evidence. That's not what happened here. Counsel presented evidence at both the unfitness hearing and the best interest hearing. In D.R., the counsel for the absent parent was barred from cross-examining the state's witness and presenting argument. Again, that's not what happened here. Respondents counsel cross-examined the state's witness at the unfitness hearing and presented argument at both the unfitness hearing and best interest hearing. Do we know why neither of the parents testified? We do not, Your Honor. The record is silent on that. We do know, and this goes to your question that you asked of opposing counsel, that the father was at one point apparently contemplating testifying. On June 7, 2012, respondents counsel requested and received the transcripts of the state's presentation of evidence on March 13th in the best interest hearing so that the transcripts and the information contained in counsel's written motion could be sent to the father, who is a federal prison in California serving time of federal heroin charges, so that he could testify. We do not know why that didn't happen. We do know that on August 14th, counsel requested and did not receive another continuance and that the respondents portion of the best interest hearing went forward on August 28th. The reasons for that for the denial of that continuance are not in the record, nor the reasons for the request for a continuance. So we're really being asked to speculate here. And what we do know is that the decision to call a witness is a trial strategy decision that in this case can't be reviewed because the record does not disclose what any witness or proposed witness, either the parents or these unnamed and unknown other witnesses that respondents proposed also could have been called, would have said. We also know that counsel for the respondents as he was concluding his argument for best interest hearing said that he had presented the he had received his client's contentions, presented what they wanted him to present and quote, what we have remaining is argument. And I think that raises the presumption that counsel made a trial strategy decision. And really what I think the respondents are seeking here as shown in their opening brief is a collateral proceeding. They seek to they seek further proceedings. They seek an evidentiary hearing based on this prospective ineffective assistance of counsel claim that they concede they cannot prove on direct appeal. Well, what efforts could they have made that they didn't to show a different outcome or attempt to show a different outcome? What could they have filed or what could they have done to supplement the record to show that the prejudice and that there would have been a different outcome? Well, Your Honor, the statute, both the Adoption Act and the Court of Civil Procedure provide for a collateral proceeding in this type of case under Section 2-1401. And that's incorporated into the Adoption Act at 750 ILCS 50-20B. And if the respondents wish to raise a collateral claim, then they have that avenue to do so. But what you're saying once the foster parents go forward with an adoption petition, is that what you're saying? I'm not sure how they would raise this collateral claim. I'm sorry, Your Honor, foster parents? I thought there was a foster parent here that wanted to adopt a child. Yes, Your Honor, she testified at the best interest hearing, but I'm not sure I follow. Well, explain to me the collateral process that you're talking about that they could have raised. You said adoption? I'm sorry, in the Adoption Act, it states that a parent whose rights have been terminated may raise a collateral claim under Section 2-1401. Are you asking if the foster parent could raise it? No. Yes, but the respondents here are seeking an evidentiary hearing on this prospective ineffective assistance and counsel claim. They seek to gather the evidence that they conceive does not exist to award relief on direct appeal and seek to turn this appeal into a sort of hybrid direct appeal and collateral review process. There's no statutory basis for that hybridization of this direct appeal, and if the respondents seek collateral relief, they must do so under the procedures set forth in the Adoption Act. I guess what I was saying, what they could have done is they could have named some witnesses or they could have shown what type of completion had been accomplished of service plans and that type of thing to prove the second prong. Could they not? I mean, I suppose that whatever sort of basis exists in other types of appeals for finding where prejudice has been found in an ineffective assistance of counsel claim, that's the type of evidence that is not in this record. We don't know what the identity of these proposed witnesses is, the unnamed ones, and we don't know what the parents would have said. If there's a mechanism to get that information, couldn't they have done that under 1401? Couldn't they have filed a 1401 ineffective assistance of counsel claim attached to the affidavits like Justice Chapman is asking about? They would have named the witnesses and would have said if they were called, this is what would have been said. Not only that, if I had been allowed to participate, this is what I would have said. Isn't that the way it could have been done to show an ineffective assistance of counsel claim? But that wasn't done here. No, Your Honor. Thank you. I appreciate it. If there are no further questions, I just request that the Court affirm for the reasons stated in the people's brief. For the collateral issues that were discussed by opposing counsel, I would refer the Court to NRACHW that I cite in my brief for other issues. On page 830 of that case it says, since the Juvenile Court Act does not provide for collateral review of its judgments, we, meaning the appellate court, retain jurisdiction of this matter and remand the cause for hearing on respondents' ineffective assistance of counsel claim. So going by that, you go directly from the Court to the appellate court, I would think. Because I was phoned by the judge and asked to take this up on appeal, and it was done in the trial court when I had it. I guess what we're asking, though, is if you had conferred with clients, and they said, well, if I would have been allowed to give a telephone testimony, I could have explained to the judge X, Y, and Z as to why I shouldn't have talked to him. And so my due process rights were denied. But nothing like that is in this record right now. Would you agree with that? Yes, Your Honor. So that's kind of the dilemma the State is arguing. Right. There's nothing here. And I think that's the dilemma that they dealt with in CJ, that the record wasn't there. Since I got this case, I've had one short phone call with the father, and he paid for it, called me, and one letter from him, and I just established email contact with him yesterday. They're in federal prison, and that's a whole different animal than Illinois Department of Corrections, of which I was a guard for five years, so I know pretty well. I've already gone over that the record on appeal doesn't contain all I would want it to be, but when I got it, I was stuck with it. And as I said, it's made me a much better attorney at trial. I like to build the best record I can. And then the opposing counsel talked about due process, and the counsel informed the clients. I just don't think that's good enough. They need transcripts of every hearing after every hearing. And the opposing counsel stated something about the defendant contemplated testifying. While he did request some transcripts, I think that should have been provided for him by the attorney. I don't think he should have had to request that. But I don't know if he contemplated testifying, and I don't know if that's in the record. So you think that the parents, if they're incarcerated, they have an automatic right  I think that satisfies due process. Even if they don't request them or if they don't appear to have any concern or interest in participating. Right now, if I was the trial attorney starting out on this case, I would automatically send them transcripts. But you learn over time. When you're presented with something, you learn. And apparently Mr. Deercroft, the trial attorney, hadn't come up with this. And to be truthful, I've never had clients in federal court. I've had them in state, but not federal. Do you know who pays for the transcripts? The county. I've had Johnson County. It was contested adoption. I was appointed for the father. He was in jail in Nashville, and the court paid for me to go down to Nashville, stay overnight, do his deposition after he was presented with the transcripts. And I was even allowed to have a video so the judge could watch his face. We're talking about taking children away. I think the only thing worse than that would be the death penalty, which we don't have to worry about in Illinois anymore. Thank you.